**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* Larry Hawkins, *et al*.,<br>*Plaintiffs*<br>v.<br>**MANTECH INTERNATIONAL CORPORATION** *et al.*,<br>*Defendants*. | Civil Action No. 15-2105 (ABJ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE MANTECH'S ANSWER AND AFFIRMATIVELY ASSERTED DEFENSES**

Plaintiffs Clinton Sawyer, James Locklear, Kent Nelson, Randall Hayes, and Larry Hawkins ("Plaintiffs") submit this memorandum of law in support of their motion to strike ManTech's August 10, 2023-filed Answer (Doc. 109).

## I. INTRODUCTION.

Almost six years ago, this Court unsealed the complaint in this action. Doc. 15. Discovery is now completed. ManTech has had ample time to investigate and discover facts sufficient to file an Answer to Plaintiffs' Third Amended Complaint ("TAC") that complies with the Federal Rules of Civil Procedure. Instead, ManTech has filed an Answer that impermissibly 1) pollutes the record with self-serving statements, 2) feigns ignorance through reliance on boilerplate general denials and vacuous claims of "lack of knowledge" and 3) conceals from the Court and Plaintiffs the factual basis of defenses that ManTech intends to use to defeat Plaintiffs' recovery. ManTech's Answer violates both Fed. R. Civ. P. 8 (b) and 11 (b) and should be stricken with instruction to file a compliant Answer within fourteen (14) days.

## II. GOVERNING LAW.

"In responding to a pleading, a party must state in short and plain terms its defenses to each claim asserted against it; and admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. ("Rule") 8 (b) (1) (A) and (B). Moreover, "A denial must *fairly* respond to the *substance* of the allegation." (emphasis added). Rule 8 (b) (2).

Rule 8 is subject to Rule 11 which states at (b) (3) and (4):

> By presenting to the court a pleading . . . an attorney . . . certifies that *to the best of the person's knowledge, information, and belief*, formed after an *inquiry reasonable under the circumstances* . . . the factual allegations *have evidentiary support* . . . and the denials of factual contentions are warranted *on the evidence* or . . . are *reasonably* based on . . . lack of information. (emphasis added).

An Answer filed at the very outset of litigation is subject to a different Rule 11 certification standard than an Answer filed at the close of discovery. Specifically, the "reasonable inquiry" conducted under the time pressure of a 21-day response is quite different from the Rule 11 certification which occurs after the close of discovery wherein a defendant has the benefit of additional knowledge, information, and belief gained through investigation and the review of sworn deposition testimony, documents produced in discovery, sworn interrogatory answers, and answers to requests for admission.

For Rule 11 to have any meaning, the certification that accompanies an Answer filed after the close of discovery must reflect what has been learned in the period after the complaint was filed and during discovery. *See Djourabchi v. Self*, 240 F.R.D. 5, 12 (D.D.C. 2006); *David v. Crompton & Knowles Corp.* 58 F.R.D. 444 1973) ("[a] party . . . may not deny sufficient information or knowledge with impunity, but is subject to the requirements of honesty in pleading. . . ."); *United States v. Long*, 10 F.R.D. 443, 445 (D. Neb. 1950) ("If a pleading is . . . signed with intent to defeat the purpose of [Rule 11], it may be stricken as sham and false . . ."). *See also Sibley v. Choice Hotels International*, 304 F.R.D. 125 (E.D.N.Y. 2015) explaining "a party may not deny

having knowledge or information if the necessary facts or data involved are within his knowledge or can easily be brought within his knowledge or information." (internal citations and quotations omitted).

## III. ARGUMENT.

### A. ManTech's Answer Violates Rules 8 (b) and 11 (b).

a. ManTech's Self-Serving Statements Must be Struck from its Answer.

The purpose of an Answer is to fairly respond to the substance of the allegations of a plaintiff's complaint. An Answer is not a license to unfairly insert into the record a partisan narrative of the litigation or a laundry-list of self-serving statements. The first two pages of ManTech's Answer and Footnote 1 constitute an unsolicited, self-serving narrative of the case history. The statements contained therein have nothing to do with the allegations of the TAC and should be omitted from a refiled Answer. Similarly, ManTech's footnote 2 is irrelevant surplusage that should also be omitted.

In responding to some paragraphs of the TAC, ManTech improperly and self-servingly adds assertions of fact not contained in the TAC. For example, TAC ¶13 alleges:

> Relator/Plaintiff Randall Hayes ("Hayes") is a citizen of Alabama and was employed by ManTech at the KMSF from October 2012 to May 2013 to perform services pursuant to the Contract.

Violating Fed. R. Civ. P. 8 (b)(2) ManTech answers

> ManTech admits Plaintiff Hayes was a ManTech *at-will* employee who worked on the Contract at the KMSF from November 12, 2012 to May 31, 2013.

TAC ¶13 makes no claim regarding the type of employee Randall Hayes was. Were this issue to be pressed, it is likely that a Virginia court would find Mr. Hayes to be an employee for a

fixed term as ManTech required him work twenty-four months or face a severe financial penalty.[1] *See* TAC ¶¶157-159. Regardless, the "fact" of Hayes as an at-will employee cannot be established by ManTech "admitting" it through its Answer.

b. A Refiled Answer Must be Devoid of Feigned Statements of Ignorance.

ManTech's Answer is also deficient because it asserts general denials that are not credible measured against the certifications of Rule 11. ManTech's denial of TAC ¶2 is demonstrative. This paragraph states:

> The deaths of U.S. military personnel in the Iraq War prompted the development of the United States Army Mine Resistant Ambush Protected vehicles ("MRAPs") program. The 'V'-shaped, armored MRAPs were developed and designed to protect the lives of U.S. military personnel by withstanding improvised explosive device (IED) attacks and ambushes.

To this assertion of fact, ManTech feigns – and pleads – complete ignorance. It states:

> ManTech lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2, and on that basis, denies those allegations.

Balderdash. If any entity knows about the imperative of the MRAP program it is ManTech and its Senior Vice President for Strategy Michael Brogan (*See* TAC ¶¶192, 200, 330-332). Just prior to accepting his high-paying ManTech job, Brogan had the title of Brigadier General, United States Marine Corp and Commander, Marine Corps Systems Command with specific responsibility as the Joint Program Executive Officer for the Mine Resistant Ambush Protected

---

[1] *See Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 917 (Va. 1987) ("An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer. *See Town of Vinton v. City of Roanoke*, 195 Va. 881, 80 S.E.2d 608 (1954). 'The general rule of law is . . . that, where the consideration for the promise of one party is the promise of the other party, there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement. Both parties must be bound or neither is bound.' *Id.* at 896, 80 S.E.2d at 617 (quoting *American Agricultural Co. v. Kennedy*, 103 Va. 171, 176, 48 S.E. 868, 870 (1904)).")

(MRAP) Vehicle Program.[2] Thus, ManTech's general denial of the assertion of Paragraph 2 – combined with the feigned ignorance of ManTech's answers to Paragraphs 3, 4, and 5 – are simply not credible under the certification standard of Rule 11 (b)(4).[3]

More pointedly with respect to Count IV, ManTech's assertion of "lack of knowledge" cannot be squared with the information that could have and should have been gained from a lengthy discovery process. For example, TAC ¶213, alleges:

> At ManTech's direction, Hawkins executed another "visa run" on March 27, 2013, whereby he met Millbrook agents at the Kuwait International Airport in the early morning hours in order to obtain his passport, passed through Kuwait exit immigration control, flew to Bahrain, passed through Bahraini entry immigration control, passed through Bahraini exit immigration control, flew back to Kuwait where his passport was stamped with another six-month tourist visa, met the Millbrook personnel as he exited the airport to surrender his passport, and returned to his living quarters.

ManTech's Answer, with the benefit of six years available for fact finding, states only:

> ManTech admits that its Kuwaiti sponsor, Millbrook, was responsible for, among other things, obtaining Visa 18s which required physical possession of employees passports in accordance with Kuwaiti practice. ManTech admits Plaintiff Hawkins entered Kuwait on March 27, 2013 and told ManTech he resolved the legal case preventing his return to Kuwait. ManTech lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations in Paragraph 213, and on that basis, denies the remaining allegations in Paragraph 213.

In contravention of Fed. R. Civ. P. 8 (b) (2), the first two sentences of ManTech's Answer do not "fairly respond to the substance of the allegation." Instead, the sentences are a salad of

---

[2] See https://www.c-span.org/video/?200030-1/mine-resistant-ambush-protected-vehicle-program

[3] The reflexive coupling of lack of knowledge or information with a default denial has been critiqued as oxymoronic by another court. *See e.g., Young-Smith v. Recovery Mgmt. Servs.*, Inc. (N.D. Ill., 2012) ("Counsel . . . compounds his Rule 8(b)(5) violation by going on 'and therefore deny the same.' That is of course oxymoronic -- how can a party that asserts (presumably in good faith) that it 'lack[s] sufficient knowledge to admit or deny' an allegation, or even (as Rule 8(b)(1)(B) specifies) 'enough information to form a belief as to the truth' of an allegation, then proceed to deny it in accordance with Rule 11(b)? Accordingly the quoted 'and therefore...' phrase is stricken wherever it appears in the Answer.").

words similar, but ultimately unrelated to the allegation. Paragraph 213 makes no reference to a "legal case." Moreover, after six years of litigation, ManTech's general denial, *i.e.,* "ManTech lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations in Paragraph 213, and on that basis, denies the remaining allegations," is not credible. There are any number of ManTech employees who could have been interviewed or documents referenced to determine whether 1) ManTech scheduled a "visa run" for Larry Hawkins and other ManTech employees on or about March 27, 2013; 2) in executing that visa run Hawkins (or other ManTech employees) met Millbrook agents at the Kuwait International Airport in the early morning hours; 3) Millbrook was in possession of Hawkins's passport; 4) Millbrook returned Hawkins passport to him; 5), Hawkins, after receiving his passport back from Millbrook, passed through Kuwait exit immigration control, flew to Bahrain, passed through Bahraini entry immigration control, passed through Bahraini exit immigration control, and flew back to Kuwait where his passport was stamped with another six-month tourist visa; 5) Hawkins met the Millbrook personnel as he exited the airport to surrender his passport; and 6) ManTech transported him back to his living quarters.

This deficiency is repeated with respect to TAC ¶¶250-255. These paragraphs allege the hazards of the chemicals released by the grinding or burning of the MRAP Chemical Agent Resistant Coating ("CARC") surfaces. For example, at ¶250, Plaintiffs alleges:

> Isocyanate/HDI is highly irritating to skin and the respiratory system. Heavy exposure to it can lead to itching and reddening skin, burning sensations in the nose and throat, and watering of the eyes. With extreme exposure, HDI can cause a cough, shortness of breath, pain during respiration, increased sputum production, and tightening of the chest.

After six years, ManTech feigns ignorance by answering, "ManTech lacks sufficient knowledge or information to form a belief as to the truth of the allegations . . . and on that basis, denies those allegations." Such ignorance is not credible under Fed. R. Civ. P. 11. ManTech has had six years

to investigate this simple allegation.

Again, at TAC ¶266, Plaintiffs allege:

> Plaintiffs and other ManTech employees experienced immediate and long-term ill-health effects from their exposure to toxic pollution at the KMSF that continue to this day. All Plaintiffs experienced headaches, respiratory distress, sinus congestion, mucus expectoration, and burning in their eyes and throat during the time that they worked at the KMSF. Some Plaintiffs experienced chronic, daily nosebleeds as a consequence of working in the KMSF during ManTech's control of the facility.

To this allegation, ManTech answers

> ManTech lacks sufficient knowledge or information to form a belief as to the truth of the allegation in Paragraph 266 regarding "other ManTech employees" not identified, and on that basis, denies that allegation. ManTech denies the remaining allegations in Paragraph 266.

Again, six years of litigation and six years of opportunity to interview employees and examine records – including medical records kept by ManTech – pleading lack of knowledge is non-credible under Rule 11. The Court should strike the Answer and order Defendants to file a new Answer that complies with Rules 8 (b) and 11 (b).[4]

**B. ManTech's Affirmative Assertion of Defenses Violates Rules 8 (b) and 11 (b).**

ManTech's affirmative asserted defenses do not provide fair notice of the factual predicates supporting them and are too vague for Plaintiffs prepare for trial. Absent additional detail, Plaintiffs will be forced to guess at the details of ManTech's affirmative defenses. ManTech should be required to articulate its affirmative defenses with sufficient particularity to place Plaintiffs on notice of the facts that Defendants will use to defeat their claim. The prevailing

---

[4] Other courts have taken more drastic action. *See Greenbaum v. United States*, 360 F. Supp. 784, 787-788 (E.D. Pa., 1973) ("A fact which is denied for lack of knowledge or information may be deemed admitted if the matter is one to which the party does have knowledge or information. Defendant in this action failed to undertake even a minimal investigation and should be held to admit facts about which it had information. The [Defendant] will be held to an admission" of the allegation.) (internal citations omitted). *David v. Crompton & Knowles Corp. supra* 58 F.R.D. at 446 ("An averment will be deemed admitted when the matter is obviously one as to which defendant has knowledge or information.").

standard for such specificity has been articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (together, "*Iqbal*/*Twombley*").

Every defendant has defenses to a claim. Specifically, a party may defend against a Plaintiff's allegations by demonstrating to the Court or to a jury that, as a matter of fact, the defendant did not do the things alleged. ManTech's paragraph-by-paragraph denials made in response to specific paragraphs of Plaintiffs' TAC constitute ManTech's general defense.

Yet, in addition to the paragraph-by-paragraph denials, ManTech affirmatively asserts eighteen specific defenses. *See* "Defenses" 1-18, Doc. 109, Page 126-129 of 131. These affirmatively asserted defenses suggest the existence of facts and arguments that, if true, will defeat Plaintiffs Sawyer, Nelson, Hawkins, Hayes, and Locklear's claims, even if all their allegations are proven true. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (*citing Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir. 2003)). ManTech's asserted defenses have the characteristic of a bar to the right of recovery even if Plaintiffs' general complaint were admitted. *Id*. (citing *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995)).

In many jurisdictions, affirmative defenses must be pled with the specificity of *Iqbal*/*Twombley*. *See, e.g., Barnes v. NCC Bus. Servs., Inc.*, 2018 U.S. Dist. LEXIS 186403, 5-6 (D. Md., 2018); *Long v. Welch & Rushe, Inc.*, 28 F.Supp.3d 446, 461 (D. Md. 2014) ("The majority of district courts, including those within this circuit . . . have concluded that the *Twombly-Iqbal* approach applies to affirmative defenses."); *Bradshaw v. Hilco Receivables, LLC*, 725 F.Supp.2d 532, 536 (D. Md. 2010). The purpose of that requirement such is to provide plaintiffs with "fair notice of the factual basis for an … [asserted] defense," and that holding

defendants to the same plausibility standard as plaintiffs promotes the interests of consistency and fairness. *Bradshaw*, 725 F.Supp.2d at 536. Under this view, a mere recitation of a laundry list of affirmative defenses without any supporting detail is contrary to the requirements of the *Twombly-Iqbal* standard. *Barnes*, *supra*. In these jurisdictions, where a defendant fails to meet this standard, an order striking the answer, with or without leave to refile, is the appropriate remedy. *Barnes*, at *6; *see also Oracle Am., Inc. v. Terix Computer Co.* (N.D. Cal., 2015) ("A party may move to strike affirmative defenses pursuant to Fed. R. Civ. P. 12(f)" on the ground that "they are no more than conclusions, are not entitled to the assumption of truth" and on the ground that they do not "plausibly give rise to an entitlement to relief.").

The United States Court of Appeals the District of Columbia Circuit has yet to announce a single, jurisdiction-wide rule with respect to the application of *Iqbal/Twombley* to pleading affirmative defenses. Noting early time pressures faced by defendants at the outset of litigation, some district court judges in the District of Columbia circuit have declined to apply *Iqbal/Twombley*'s rigor to affirmative defenses. *See Moore v. United States*, 318 F.Supp.3d 188, 193 (D. D.C. 2018); *La Michoacana v. Lacteos*, 905 F.Supp.2d 189, 191 (D. D.C. 2012) ("A plaintiff chooses when to file the complaint, subject only to the statute of limitations. In most cases this allows for months or years of contemplation and investigation. In contrast, a defendant must typically submit an answer within 21 days after being served with the summons and complaint. . . . Thus, defendants must assemble their response in relatively little time.") (internal quotations omitted); *Malibu Media, LLC v. Parsons* , No. 12-1331, 2013 WL 12324463, at *3 (D.D.C. May 31, 2013); *See also Meas v. CVS Pharmacy, Inc.*, 2011 WL 2837432, at *3 (S.D.Cal. July 14, 2011) (noting that it is unrealistic to "expect a defendant to investigate and to adequately prepare an answer containing all relevant affirmative defenses within 21 days of

service of the complaint"); *Wells Fargo & Co. v. United States*, 750 F.Supp.2d 1049, 1051 (D. Minn. 2010) ("Whatever one thinks of *Iqbal* and *Twombly*, the 'plausibility' requirement that they impose is more fairly imposed on plaintiffs who have years to investigate than on defendants who have 21 days."); *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 726 (W.D. Va. 2010) ("[k]nowledge at the pleading stage is often asymmetrical, disproportionately favoring the pleading of a claim by a plaintiff who has had the opportunity to time its filing. While the plaintiff often can conduct an investigation before filing the complaint to ensure its allegations are adequately supported, the defendant must respond quickly after being served.").

The oft-cited disparity between a Plaintiff's burden and a Defendant's burden *at the start* of litigation is altogether absent when the case has already proceeded beyond discovery and when *both* parties have had the opportunity to thoroughly investigate facts. *Compare*, *LBCMT 2007-C3 Urbana Pike, LLC v. Sheppard*, 302 F.R.D. 385, 387 (D. Md. 2014) ("Rule 8(a)'s more demanding principle is better applied to claimants who have had significant time to craft their claims. Applying the same principle to defendants unfairly places on them too substantial burden too early in the litigation process"). After discovery has closed and as the Parties prepare for trial, it is inherently unfair – and a waste of judicial resources -- for Defendants to withhold the specific, dispositive facts that will defeat Plaintiffs' claims. *See Hill v. Blue Cross and Blue Shield of Michigan*, 237 F.R.D. 613, 616 (E.D. Mich. 2006) ("An answer, by its nature, *assists the Court* and the opposing party in clarifying the issues in the complaint.") (emphasis added). The United States District Court for the District of Columbia disapproves such "cat-and-mouse" and "hide-the-ball" gamesmanship. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 174 F.Supp.3d 415, 423 (D. D.C. 2016); *Intelsat U.S. Sales LLC v. Juch-Tech, Inc.*, 305 F.R.D.

3 (D.D.C. 2014).

For example, ManTech's "Fourth Defense" affirmatively asserts that Plaintiffs claims are barred "because . . . Plaintiffs expressly and/or implicitly assumed the risk of the allegation described in Count IV." ManTech's assertion here is that Plaintiffs – as victims of human trafficking – *invited* the abuse and cannot, now, complain to the Court. Under Rule 11 (b)(4), Defendants owe Plaintiffs a detailed recitation of the facts that underlie this bold statement.

As another example, ManTech's "Ninth Defense" states that Messrs. Locklear, Nelson, Hayes, Sawyer, and Hawkins's "claims are barred, in whole or in part, because of intervening or superseding cause of the alleged loss or harm to Plaintiffs, including, but not limited to, actions taken by the incumbent joint logistics integrator for the KMSF." Under Rule 11, Defendants owe Plaintiffs a far more detailed recitation of fact underlying this affirmatively asserted defense. At this stage of the litigation, it is not fair to leave Plaintiffs guessing. Rule 11 requires the good-faith basis for the inclusion of this statement in ManTech's pleading.

As another non-exclusive example, ManTech's "Seventeenth Defense" claims "that Plaintiffs unreasonably failed to take advantage of well-disseminated personnel policies designed to address employee concerns provided to them by ManTech." Plaintiffs are owed a recitation of fact that includes the specific personnel policies relied upon by ManTech, a factual basis for claiming that such personnel policies were "well-disseminated" (or at least disseminated to Plaintiffs) and how, specifically, Plaintiffs Locklear, Nelson, Hawkins, Hayes, and Sawyer acted "unreasonably."

/

/

/

## IV. CONCLUSION.

For the afore-stated reasons, the Court should strike ManTech's Answer and enter an Order requiring ManTech to file, within fourteen days, an Answer that complies with the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Joseph A. Hennessey________
Joseph A. Hennessey, Esq.
The Law Office of Joseph Hennessey, LLC
2 Wisconsin Circle, Suite 700
Chevy Chase, Maryland 20815
Telephone: (301) 351-5614
Email: jhennessey@jahlegal.com